**MONTGOMERY COUNTY, MARYLAND, Petitioner,**

v.

**DEPARTMENT OF LABOR, Respondent.**

No. 84–1633.

United States Court of Appeals, Fourth Circuit.

Argued Feb. 6, 1985.

Decided March 27, 1985.

Rehearing and Rehearing En Banc Denied May 7, 1985.

---

Joyce R. Stern, Asst. County Atty., Rockville, Md. (Paul A. McGuckian, County Atty., Robert G. Tobin, Jr., Deputy County Atty., Bruce P. Sherman, Sr. Asst. County Atty., Rockville, Md., on brief), for petitioner.

Marcia A. Lurensky, U.S. Dept. of Labor, Washington, D.C. (Francis X. Lilly, Sol. of Labor, William H. DuRoss, III, Associate Sol., Washington, D.C., for Employment and Training; Harry L. Sheinfeld, Washington, D.C., Counsel for Litigation on brief), for respondent.

Before RUSSELL, HALL, and PHILLIPS, Circuit Judges.

K.K. HALL, Circuit Judge:

Montgomery County, Maryland (the "County") petitions for review of a final decision of the Secretary of Labor (the "Secretary"), which disallowed certain expenditures by the County and its subgrantee under the Comprehensive Employment Training Act ("CETA") of 1973, Pub.L. No. 93–203, §§ 1 *et seq.*, 87 Stat. 839 (1974), *amended by* CETA Amendments of 1978, Pub.L. No. 95–524, §§ 1 *et seq.*, 92 Stat. 1909 (1978) (repealed 1982),[1] and required repayment of those funds out of non-grant monies. We affirm.

### I.

The County was a prime CETA sponsor from October 1, 1978, through September 30, 1980. As a prime sponsor, the County received funds from the federal government under many different CETA grants.

---

1. CETA, as amended, was repealed by § 184 of the Job Training Partnership Act, 29 U.S.C. §§ 1501 *et seq.*, effective October 13, 1982. 29 U.S.C. §§ 801 *et seq.* Under the transitional provision of that Act, pending cases continue to be adjudicated under CETA. 29 U.S.C. § 1591(e).

The County was obligated under those grants to assure that the funds, including funds passed on to subgrantees, were expended properly.

In April and again in October, 1979, the County, as a prime sponsor, contracted with the National Center for Economic Community Development (the "NCECD") to provide a personal development program for County residents with poor work histories and little or no job skills. NCECD received a total of $235,237.42 from the County under the two contracts.

On August 30, 1981, the accounting firm of Fox & Company conducted an audit of the CETA funds awarded to the County for fiscal years 1979 and 1980. As a result of that audit, the Grant Officer for the Department of Labor (the "DOL") disallowed the entire amount of the monies paid to NCECD under the contracts and ordered the County to repay that sum to the DOL.

The County then requested a hearing on the Grant Officer's determination. Prior to the hearing, the County provided the DOL with additional documentation. The Grant Officer allowed all of the expenditures for which the County could provide documentation, leaving a total balance of disallowed expenditures of $173,427.04.

On August 23, 1983, a hearing regarding the disallowances was held before an administrative law judge ("ALJ"). At that hearing, Eileen M. Haley, a certified public accountant and the accountant in charge of the NCECD audit, testified that the records of NCECD were unauditable. She stated that there was neither a chart of accounts nor a general ledger which could be used to identify CETA expenditures. She explained that it was impossible to relate the individual checks written by NCECD to the invoices for alleged CETA costs that were submitted to the government. Testimony offered by the County at the hearing revealed that its attempt to reconstruct finan-

cial records from which an audit could be conducted was a failure.

On March 20, 1984, the ALJ rendered his decision. He acknowledged that there was "abundant testimony in the record indicating that the services contracted for through the subgrant were provided by NCECD in a satisfactory manner." The ALJ nonetheless disallowed the entire amount at issue and ordered the County to repay the funds. He reasoned that:

> The best the County can say is that *some* of the grant funds were spent in furthering the aims of the Act, because it knows that NCECD conducted its program and it apparently produced satisfactory results. But the County cannot identify how much of the grant funds were spent by the subgrantee, much less identify the percentage of these expenditures made in accordance with the terms of the grant, due to the absence of financial records.

(Emphasis added). The ALJ's decision became the final decision of the Secretary pursuant to 20 C.F.R. § 676.91(f).

The County petitions for review.

## II.

On appeal, the County contends that it is inequitable to equate its record-keeping failure with a misspending of federal monies and to require it to repay virtually all of the funds expended by its subgrantee, NCECD. In support of its contention, the County asserts that the purposes of CETA were met by NCECD's performance and cites corrective steps which the County has since taken.[2] We are unpersuaded.

In accepting federal funds to conduct a CETA program, the County agreed to comply with CETA and its regulations, and in particular, the requirements for maintenance of records. Section 133(a) of CETA, as amended, Pub.L. No. 95–524, 92 Stat. 1949 (repealed 1982) provides in relevant part that: "[e]very recipient of funds under

---

**2.** The record reveals that upon learning that NCECD's records were unauditable, the County obtained a judgment against NCECD and revised its form contract to include a requirement that subgrantees stipulate to their ability to maintain adequate financial and accounting systems.

this Act shall make, keep, and preserve such records as the Secretary shall require with regard to each employee and each participant." The applicable regulations at 20 C.F.R. § 676.37(a)(3) further amplify this provision by mandating that prime sponsors "ensure that contractors and subrecipients maintain and make available for review by the recipient and the Department of Labor all records pertaining to the operations of programs under such contracts and subgrants, consistent with the maintenance and retention of record requirements." Thus, the County, as a grant recipient, had a statutory obligation to maintain records and to assure maintenance of records by its subgrantee, NCECD. This the County failed to do.

The County argues that notwithstanding its failure to fulfill its statutory and regulatory obligations, the DOL may not recover grant monies. We disagree.

 Section 106(d)(1) of CETA, as amended, Pub.L. No. 95–524, 92 Stat. 1297 (1978) (repealed 1982), expressly provides for the repayment of grant funds. It reads, in pertinent part, as follows:

> If the Secretary concludes that any recipient of funds under this Act is failing to comply with any provision of this Act or the regulations under this Act or that the recipient has not taken appropriate action against its subcontractors, subgrantees, and other recipients, the Secretary shall have authority to terminate or suspend financial assistance in whole or in part and order such sanctions or corrective actions as are appropriate, including the repayment of misspent funds from sources other than funds under this Act and the withholding of future funding, if prior notice and an opportunity for a hearing have been given to the recipient. . . .

We hold that by failing to comply with the record-keeping requirements of CETA and its regulations, the County "misspent" federal funds within the meaning of the statute. *City of Oakland v. Donovan,* 707 F.2d 1013 (9th Cir.1983).

Record keeping is at the heart of the federal oversight and evaluation provisions of CETA and its implementing regulations. Only by requiring documentation to support expenditures is the DOL able to verify that billions of federal grant dollars are spent for the purposes intended by Congress. Unless the burden of producing the required documentation is placed on recipients, federal grantees would be free to spend funds in whatever way they wished and obtain virtual immunity from wrongdoing by failing to keep required records. Neither CETA nor the regulations permit such anomalous results.

Accordingly, the repayment order of the Secretary is affirmed.

AFFIRMED.