825 F.2d 412
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED SOUTH AND EASTERN TRIBES, INC., Petitioner,
v.
UNITED STATES DEPARTMENT OF LABOR, Respondent.
 Nos. 86-3211, 86-3368
 United States Court of Appeals, Sixth Circuit.
 July 28, 1987.
 
 Before LIVELY, Chief Judge, WELLFORD, Circuit Judge, and CELEBREZZE, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 This case arises under the Comprehensive Employment and Training Act of 1973, as amended, 29 U.S.C., Section 801 et seq., (hereinafter CETA). Subsequent to this enactment, the Job Training Partnership Act 29 U.S.C., Sections 1501 through 1781, has repealed CETA, but the new Act provides that pending cases continue to be adjudicated pursuant to CETA as amended. 29 U.S.C., Section 1591(e). Since this was a pending controversy, we are guided by the provisions of CETA.
 
 
 2
 CETA provides for grants to 'Prime Sponsors' to finance classroom training and work experience for school age dropouts, heads of households, and workers over age forty as well as to provide supervisory, administrative, and financial services for the various program offices within the prime sponsorship area. United South and Eastern Tribes, Inc. 'USET'[1] became the 'Prime Sponsor' for three separate grants at issue. USET's prime sponsorship area covered seven states and the program called for the participation of thirteen different organizations.
 
 
 3
 Before us on this appeal are two petitions for review by USET. These petitions for review, which have been consolidated, were filed pursuant to the provisions of 29 U.S.C. 817.[2] The first petition sought review of the December 9, 1985, decision of Administrative Law Judge Glenn R. Lawrence of the U. S. Department of Labor, in the Matter of United South and Eastern Tribes, Inc., case number 82-CTA-A-33, which disallowed $887.24 of CETA costs incurred by USET as Prime Sponsor or incurred by one or more of USET's subgrantees. The second petition sought review of the March 17, 1986, decision in the companion case, 82-CTA-A-3, which disallowed costs of $472,249.00. These cases were consolidated for hearing at the Administrative Law Court level. After extensive hearings the ALJ directed USET to repay the disallowed costs to the United States. The decisions of the ALJ became the final decisions of the Secretary of Labor (hereafter 'Secretary') pursuant to 20 C.F.R. Sec. 676.91(f) and are the subject of this appeal. We affirm.
 
 
 4
 Background of Case #82-CTA-A-33 (First Petition)
 
 
 5
 This dispute involved a grant of $362,880 and covered a period from October 1, 1976, to March 31, 1979.
 
 
 6
 After an interim audit report issued in July of 1977 by the Department of Labor (DOL), a final report was issued to USET in October of 1978. At that time respondent questioned costs of $95,000.00. USET responded to the report in January of 1979. The grant officer then submitted on August 13, 1981 'Initial Findings and Determinations' after consideration of the positions of the parties, disallowing USET's costs of $60,586.23, seventeen percent of the entire grant amount. The disallowances were attributed principally to accounting errors by USET or missing documentation for expenditures. USET objected to the brief time given for objections to the disallowed amount and succeeded in obtaining a brief extension, but claimed prejudice in the delay of the DOL in issuing its initial determination. In September 1985, the grant officer issued a 'final determination' disallowing $33,669.00.
 
 
 7
 USET contested administratively this 'final determination,' and obtained administrative hearings before an administrative law judge during 1983 and 1984. Witnesses and other evidence were heard and considerable missing documentation was presented, reducing the ultimate disallowance to only $887.24 in a December, 1985 decision. This decision became final and is the subject of appeal. Similar due process issues to those presented in the second appeal are presented in this appeal, hereinafter discussed.
 
 
 8
 Background of Case #82-CTA-A-3 (Second Petition)
 
 
 9
 A similar history and procedure is involved in respect to this petition, but there were two grants involved, the numbers are larger, and the disallowance is much more substantial. The total of the two grants was $1,558,298, covering a period from April 1, 1975, through March 31, 1977. After the interim audit report in July of 1977, a final report on April 10, 1978 disallowed $904,779 in costs claimed (some 57% of the total grants). After administrative appeals and hearings, the grant officer's 'Initial Findings and Determinations' on July 15, 1981, reduced the disallowance amount to $883,496, and then, finally, to $601,816.
 
 
 10
 Within a week of the 'Initial Findings and Determinations' in this second appeal (on August 19, 1981) USET sent notice that documentation in reply to the Initial Determination would be sent by September 13, 1981, as required by the DOL's regulations regarding response deadlines. The grant officer responded that in order to allow adequate time for review by the DOL, all documentation must be submitted prior to the due date of September 13, 1981. In a reply letter of September 10, 1981, USET claimed prejudice by reason of delay of the DOL in issuing its Initial Determination (and in the short response time given to the grantee). After hearings before the ALJ, the figure was further reduced to $512,318, and then to $472,249, which is the final figure involved in the second appeal.
 
 Delay in Final Determination
 
 11
 The first and major issue presented by USET is its claim that it was denied due process by the long period of delay (in both cases claimed to be approximately three years) before issuance of the final determination after the Secretary began its audit and made an investigation. See 29 U.S.C.S. Sec. 816(b).[3]
 
 
 12
 USET first asserts that the DOL failed to comply with the CETA requirements of 29 U.S.C. Sec. 816(b) in that a final determination must be issued no later than 120 days after receipt of an audit reporting that a recipient of CETA funds has failed to comply with the requirements of the law. Respondent relies upon the decision of Brock v. Pierce County, 106 S. Ct. 1834, 1842 (1986), which held that CETA's 120 day final determination requirement is not a jurisdictional requisite. USET contends, however, that if prejudice occurs by reason of the delay, as it claims in this case, then the agency should be required to follow its own internal procedures or face forfeiture of the disallowance. Morton v. Ruiz, 415 U.S. 199 (1974). USET further argues that the Pierce County Court did not have an issue of prejudice before it and thus did not consider the possible effects of prejudice present here.
 
 
 13
 USET argues also that it supplied adequate documentation during the audit process, but that intervening interpretations of the regulations by the Administrative Law Court and Circuit Courts of Appeals may now prove them to be inadequate. Since approximately three years intervened between the audit and the grant officer's final determination, USET claims prejudice by the DOL decision that it must produce documentation in strict compliance with the regulations. USET claims prejudice because the documentation and sources to obtain evidence in support of the disputed expenses have now disappeared.[4] See Milwaukee County v. Donovan, 771 F.2d 983, 995-96 (7th Cir. 1985), cert. denied, 106 S. Ct. 2246 (1986); O'Keefe v. Murphy, 381 NYS2d 821, 345 N.E.2d 292, 294 (1976).
 
 
 14
 USET further contends that it has been irreparably damaged by the neglect of the DOL because such a period of time has elapsed after the audit that USET is now barred from proceeding against the subgrantees by statutes of limitation and because many of the parties who may be liable as subgrantees have disappeared. USET also claims that a lack of compulsory joinder in these cases to bring subgrantees in as parties resulted in unwillingness of these subgrantees to assist in obtaining records, again resulting in a denial of claimed due process.
 
 
 15
 The DOL does not dispute that the grant officer issued the final determinations roughly three years after the final audit reports were issued. It argues that if USET claimed prejudice by reason of the delay, then it could have initiated an action in the district court under the Administrative Procedure Act (APA), 5 U.S.C. Secs. 701-706, seeking to compel the DOL to act. Since USET failed to undertake such action, its due process claim is now untenable.
 
 
 16
 Under Pierce County respondent did have jurisdiction to proceed, administratively, to make a final decision. We also find in these cases that USET's ability to present its defenses to the claimed disallowance was not prejudiced by the grant officer's delay in issuing his final determinations. South Carolina v. United States Department of Labor, 795 F.2d 375, 378 (4th Cir. 1986). USET was required to maintain detailed accounting records. See 29 U.S.C. Sec. 835; 29 C.F.R. Sec. 98.1 et seq. (1976); Montgomery County, Maryland v. Department of Labor, 757 F.2d 1510, 1512-13 (4th Cir. 1985). Any detriment to USET brought about by a period of investigation and hearings cannot be attributed to the grant officer's delay, but rather to USET's failure to maintain records or to require its subgrantees to support with documentation the proper expenditure of CETA funds.
 
 
 17
 29 U.S.C. Sec. 835(a)(1) and 29 C.F.R. Sec. 98.27(d) (1976) clearly required USET to ensure that proper recordkeeping procedures were maintained by the subgrantees. Notwithstanding any delay by the grant officer in issuing his final determinations, USET might have initiated proceedings against the subgrantees as soon as it was informed by the final audit reports about costs which were questioned or recommended for disallowance.
 
 
 18
 In Pierce County, the final determinations were rendered two and one half to three years after the audit reports were filed. The ALJ found no prejudice to have occurred due to this delay:
 
 
 19
 The Administrative Procedure Act (APA), 5 U.S.C. Secs. 701-706, entitles any person 'adversely affected or aggrieved by agency action' to judicial review, Sec. 702, unless the relevant statute precludes judicial review or 'agency action is committed to agency discretion by law,' Sec. 701(a)(2). Clearly the statutory command that the Secretary 'shall' act within 120 days does not commit such action to the Secretary's discretion. Moreover, nothing in CETA appears to bar an action to enforce the 120-day deadline. Cf., CETA Workers Organizing Comm. v. City of New York, 617 F.2d 926, 934-936 (CA2 1983) (APA may not be used to circumvent Sec. 106(b) complaint mechanism). Thus, it would appear that a complainant adversely affected by the Secretary's failure to act on a complaint could bring an action in the district court. The court would have the authority to 'compel agency action unlawfully withheld or unreasonably delayed,' Sec. 706(1). If respondent is correct in arguing that Congress, in enacting Sec. 106(b), intended to protect grant recipients from lengthy delays in audits, grant recipients such as respondent would be within the zone of interests protected by Sec. 106(b), and would therefore have standing to bring an action under the APA to the same extent as a complainant. Cf. Association of Data Processing Service Organizations, Inc. v. Camp, 397 U.S. 150, 153, 90 S. Ct. 827, 829, 25 L.Ed.2d 184 (1970). On the other hand, were Sec. 106(b) intended only to protect complainants, there would be no need to provide grant recipients with any remedy at all-much less the drastic remedy respondent seeks in this case--for the Secretary's failure to meet the 120-day deadline.
 
 
 20
 Id. at 1839 n.7; see also South Carolina v. United States Department of Labor, 795 F.2d 375, 378 (4th Cir. 1986) ('if the State felt that it was being prejudiced by the Secretary's alleged foot-dragging, the State's remedy was to initiate a lawsuit under the Administrative Procedure Act, 5 U.S.C. Sec. 706(1) to compel agency action'); Onslow County v. Department of Labor, 774 F.2d 607, 612 (4th Cir. 1985) ('[h]ad Onslow desired a more timely audit, it could have sought an order compelling the agency action under APA, 5 U.S.C. Sec. 706(1); it has no grounds now to claim immunity from liability due to the Secretary's delay').
 
 
 21
 Furthermore, in Montgomery County, Maryland, 757 F.2d at 1513, the court held that 'by failing to comply with the record-keeping requirements of CETA and its regulations, the County 'misspent' federal funds within the meaning of the statute. City of Oakland v. Donovan, 707 F.2d 1013 (9th Cir. 1983).' The court further stated:
 
 
 22
 Record keeping is at the heart of the federal oversight and evaluation provisions of CETA and its implementing regulations. Only by requiring documentation to support expenditures is the DOL able to verify that billions of federal grant dollars are spent for the purposes intended by Congress. Unless the burden of producing the required documentation is placed on recipients, federal grantees would be free to spend funds in whatever way they wished and obtain virtual immunity from wrongdoing by failing to keep required records. Neither CETA nor the regulations permit such anomalous results.
 
 
 23
 See also St. Louis v. United States Department of Labor, 787 F.2d 342, 345 (8th Cir. 1986); Milwaukee County, Wisconsin v. Donovan, 771 F.2d 983, 996 (7th Cir. 1985), cert. denied, 106 S. Ct. 2246 (1986).
 
 
 24
 USET had other remedies if it felt there was undue delay by the Secretary. While the delay made it more difficult for USET to document its costs, it did have the affirmative duty to maintain and keep adequate records of expenditures and the bases therefor. Under these circumstances, we find no basis for USET's due process claim and invalidation of the disallowances determined by virtue of the delay involved.
 
 Excess Administrative Costs
 
 25
 A total of $172,458.00 was disallowed by the DOL as excess administrative costs because these costs exceeded 20% of the grant amount in violation of 29 C.F.R. Sec. 97.161(F) (1976). USET argues that the auditors erroneously reclassified subgrantee participant costs as administrative costs, thereby causing an alleged overexpenditure and disallowance.
 
 
 26
 USET contends that the calculations, assumptions and components used by DOL auditors to obtain the bottom line disallowance figure on the audit report should be fully disclosed or that, again, its due process rights were violated. The DOL supplied a breakdown of some of the requested information and costs involved, and USET was able to analyze these costs resulting in a substantial savings to USET. USET failed to produce documentation that the costs were proper under the Act. The $142,502 was disallowed, and the DOL did not supply further audit workpapers because they could not be located. The ALJ held that the failure of the DOL to produce a further breakdown and explanation of the remaining $146,502 disallowed costs as excessive was essentially harmless.
 
 
 27
 We agree that once the grant officer's administrative file was entered into evidence, the burden shifted to USET to prove that the costs were proper under the Act. See Alameda County Training & Employment Board v. Donovan, 743 F.2d 1267, 1269 (9th Cir. 1984). Responsibility for documenting CETA expenditures is imposed on recipients. The grant officer's inability to produce all of the audit workpapers, however, did make USET's position difficult and we question whether the information furnished was sufficient to put USET on notice as to the nature of and basis for DOL's actions.
 
 
 28
 We believe, under the circumstances that a remand is in order on this issue. The ALJ originally ordered the production of the audit papers, which could not be located. Further consideration needs to be given to the due process claim that the failure to produce these workpapers may have constituted a denial of due process as to the $146,502.00 excessive administrative expense.
 
 
 29
 The ALJ's decision is AFFIRMED, and we find no prejudice with respect to the delayed issuance of the Secretary's final determinations in these cases. We REMAND, however, for further consideration (and proof) of the $146,502.00 disallowance due allegedly to excessive administrative expenses in the absence of certain audit workpapers.
 
 
 
 [1]
 USET is a non-profit Tennessee corporation organized in 1969 to assist Native American groups in the Southern and Eastern parts of the United States to interact with the Federal Government and with each other
 
 
 [2]
 The pertinent provisions of 29 U.S.C.S. Sec. 817 (1982) are:
 Sec. 817. Judicial review
 (a) If any prime sponsor is dissatisfied with the Secretary's final action with respect to the disapproval of its comprehensive employment and training plan under section 104 [29 USCS Sec. 814], or if any recipient is dissatisfied with the Secretary's final action with respect to a sanction under section 106 [29 USCS Sec. 816], or if any interested person is dissatisfied with or aggrieved by any final action of the Secretary authorized under section 106 [29 USCS Sec. 816], such prime sponsor, recipient, or person may, within 60 days after notice of such action, file with the United States court of appeals for the circuit in which the prime sponsor, recipient, or person resides or transacts business a petition for review of such action.
 (b) The findings of fact by the Secretary, if supported by substantial evidence, shall be conclusive, but the court, for good cause shown, may, in whole or in part, set aside the findings of the Secretary or remand the case to the Secretary in whole or in part to take further evidence, and the Secretary may thereupon make new or modified findings of fact and may modify the previous action, and shall certify to the court the record of the further proceedings.
 
 
 [3]
 The pertinent subsection provides:
 Whenever the Secretary receives a complaint from any interested person or organization (which has exhausted the prime sponsor's grievance system under subsection (a)(1) or which has exhausted or failed to achieve resolution of the grievance under the recipient's grievance system under subsection (a)(2) or under a collective bargaining agreement within the time limits prescribed in subsection (a)(1) or in such agreement) which alleges, or whenever the Secretary has reason to believe (because of an audit, report, on-site review, or otherwise) that a recipient of financial assistance under this Act is failing to comply with the requirements of this Act, the regulations under this Act, or the terms of the comprehensive employment and training plan, the Secretary shall investigate the matter. The Secretary shall conduct such investigation, and make the final determination required by the following sentence regarding the truth of the allegation or belief involved, not later than 120 days after receiving the complaint. If, after such investigation, the Secretary determines that there is substantial evidence to support such allegation or belief that such a recipient is failing to comply with such requirements, the Secretary shall, after due notice and opportunity for a hearing to such recipient, determine whether such allegation or belief is true.
 
 
 [4]
 For example, $41,288 in costs are disallowed for expenses from the Piscataway Convoy subgrantee where the office and all records were destroyed by fire during the period between the audit report and the initial findings and determinations