United States Court of Appeals,

Fifth Circuit.

No. 96-60004.

STATE OF LOUISIANA, DEPARTMENT OF LABOR, Petitioner,

City of New Orleans, Intervenor,

v.

UNITED STATES DEPARTMENT OF LABOR, Respondent.

March 28, 1997.

Petition for Review of a Final Decision of the United States Department of Labor.

Before HIGGINBOTHAM, SMITH and BARKSDALE, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Pursuant to 29 U.S.C. § 1578(a)(1), the State of Louisiana and the City of New Orleans petition for review of a final order of the U.S. Department of Labor ("USDOL") disallowing certain expenses allegedly incurred pursuant to the Job Training Partnership Act ("JTPA"), 29 U.S.C. § 1501 *et seq.,* and requiring the state to repay such disallowed expenses to the USDOL. Finding that petitioners are not entitled cavalierly to disregard the requirements of the JTPA, we deny the petition for review and affirm the order of the USDOL.

I.

In 1983, the state entered into an agreement with the Secretary of Labor to become a grant recipient under the JTPA.[1]

---

[1]Pursuant to this agreement, the state is required to comply with all rules and regulations governing the administration of JTPA grant funds. *See* 20 C.F.R. § 627.1 (1986).

1

Under this agreement, the state disbursed federal funds to several service delivery areas throughout the state, including New Orleans. Thereafter, the service delivery areas solicited grant proposals from service providers and selected subgrantees to receive the grant funds.[2] This case involves serious irregularities in the administration of JTPA grant funds by the New Orleans Service Delivery Area ("NOSDA").[3]

In the NOSDA, classroom training programs were generally awarded under fixed-unit-price contracts, which demand successful performance as a prerequisite for payment.[4] Accordingly, the New Orleans Client Center ("NOCC") was awarded JTPA grant funds to conduct employment workshops for young adults during program year

---

[2] Although JTPA funds may be expended by a service delivery area or its service provider, the JTPA provides that the state shall be responsible for all funds disbursed under the grant and must hold subrecipients responsible for all funds received thereunder. *See* 29 U.S.C. § 1574(d)-(e); 20 C.F.R. § 629.44(d)(1) (1986).

[3] The Orleans Private Industry Council ("OPIC") is formally responsible for the administration of the JTPA program in the NOSDA, but the New Orleans Office of Employment Training and Development ("OETD") manages the JTPA program on behalf of the OPIC and the city. Consequently, we refer to these administrative entities collectively as the NOSDA.

[4] Under a fixed-unit-price contract, compensation is based exclusively on successful performance of the contract. For every participant who successfully completes the job training program, the service provider receives a fixed fee. In comparison, a cost-reimbursement contract compensates service providers for the reasonable and necessary costs incurred pursuant to the job training program, without regard to students' success. *See* 20 C.F.R. § 629.38(e)(2) (1986); *see also* Job Training Partnership Act: Requirements for Acceptable Fixed Unit Price, Performance-Based Contracts, 54 Fed.Reg. 10,459 (1989) (stating the USDOL's official interpretation of fixed-unit-price contracts under the JTPA).

1985, at a cost of $57 per successful participant. Likewise, Technical Training Designs, Inc. ("TTD"), was awarded JTPA grant funds to provide youth competency training in basic computer skills and remedial education during program years 1986 and 1987, at a cost of $1,400 per successful participant. NOCC and TTD successfully performed their obligations under the grant contracts, and each was paid according to the fixed-unit-price formula.[5]

In 1988, the USDOL initiated an audit of the New Orleans JTPA program, focusing on program years 1986-87.[6] After finding significant irregularities, the USDOL expanded the audit to cover program years 1985 through 1989. The audit disclosed serious deficiencies in procurement procedures, and auditors requested the financial records of service providers to quantify the costs of these deficiencies. Certain providers, however, refused voluntarily to disclose their financial records, forcing the USDOL to subpoena the records.[7]

The audit report, issued by the USDOL in 1991, questioned grant costs in excess of $6.4 million and recommended that the city be designated a high-risk subgrantee. All but $142,665 of these challenged costs were ultimately resolved in a separate proceeding,

---

[5]NOCC received a payment of $142,665 under the fixed-unit-price contract, while TTD received payments of $798,630 and $280,420, respectively, under the two contracts.

[6]Under the JTPA, the program year begins on July 1 of the specified year and runs until June 30 of the succeeding year.

[7]The service providers whose contracts form the basis of this litigation—NOCC and TTD—were among those who refused to disclose their financial records.

which is irrelevant to the instant case. The USDOL was unable, however, to resolve objections concerning the fixed-unit-price contract granted to the NOCC for program year 1985.

In 1992, the USDOL issued an initial determination in this case, disallowing the entire unresolved NOCC debt of $142,665. Likewise, the USDOL disallowed total payments of $847,633 made to TTD under the fixed-unit-price contracts covering program years 1986 and 1987. Therefore, the initial determination disallowed a total of $990,298 in expenses incurred under the fixed-unit-price contracts between the NOSDA and NOCC and TTD.

After considering a response filed by the state that demonstrated that the audit report overstated total payments under the TTD contracts, the USDOL revised its initial determination, reducing the total disallowed costs allocated to TTD by $54,460. Likewise, the USDOL subsequently allowed additional costs of $41,223 under the NOCC contract. In the final determination, therefore, the total disallowance was reduced to $894,615.[8]

The state appealed this final determination to an administrative law judge ("ALJ"), who affirmed the final determination and ordered the state to repay the disallowed costs of $894,615.[9] The ALJ concluded that NOCC and TTD had failed to

---

[8]This final disallowance represents the original disallowance of $990,298 reduced by the $54,460 allowance for the TTD contract and the $41,223 allowance for the NOCC contract. Of this final disallowance, $793,173 was allocated to the TTD contract, and $101,442 was allocated to the NOCC contract.

[9]The JTPA expressly provides that grant funds expended in violation of the act must be repaid to the United States, and authorizes the Secretary of Labor to impose sanctions for

maintain accurate and reliable records as required by the JTPA[10] and that the NOSDA had violated statutory procurement procedures by failing to determine whether the grant proposals submitted by NOCC and TTD were fair and reasonable.[11] The state timely appealed to the Secretary of Labor, specifically identifying exceptions to the decision as required by 29 U.S.C. § 1576(b), but the Secretary refused to review the case. Therefore, the decision of the ALJ became the final decision of the Secretary. *See* 29 U.S.C. § 1576(b).

The state timely filed a petition for review, pursuant to 29 U.S.C. § 1578(a)(1). We then granted the city's motion to intervene in this petition for review. Having reviewed the Secretary's decision, we deny the petition and affirm the Secretary's decision.

---

noncompliance with the statute. *See* 29 U.S.C. § 1574(d)-(e).

[10]The ALJ found that neither NOCC nor TTD had maintained records of expenditures, as required by the JTPA. Indeed, the financial records were so incomplete that it was impossible for auditors to trace the grant funds.

[11]In reviewing grant proposals, the ALJ found that the NOSDA had not evaluated the cost-effectiveness of proposed programs, and grants were awarded without considering more efficient means of investing the grant funds. For example, the grant proposal submitted by NOCC left the section concerning cost information completely blank, and the NOSDA review committee failed to prepare an evaluation form on the NOCC proposal. Nevertheless, the NOCC proposal was accepted summarily, despite the fact that two members of the OPIC did not even have copies of the proposal.

Likewise, during the period in question, the NOSDA did not conduct surveys of comparable program costs to evaluate the cost-effectiveness of the grant proposals submitted by TTD. Nevertheless, despite these glaring deficiencies in the procurement procedures, the NOSDA accepted both the NOCC and TTD proposals.

The Secretary disallowed the challenged costs on two grounds, concluding that the NOSDA had failed to comply with the procurement procedures specified under the JTPA and that subgrantees NOCC and TTD had failed to maintain accurate and reliable financial records as required by the JTPA.[12] We agree.

A.

A court entertaining a petition for review of a final decision issued by the Secretary of Labor, pursuant to 29 U.S.C. § 1578(a), may exercise only limited judicial review. "Review shall be limited to questions of law and the Secretary's findings of fact shall be conclusive if supported by substantial evidence." 29 U.S.C. § 1578(a)(3).

If the language of the JTPA is plain, we must enforce the unambiguously expressed intent of Congress. *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842-43, 104 S.Ct. 2778, 2781-82, 81 L.Ed.2d 694 (1984). If the statute is ambiguous, however, we must defer to reasonable interpretations of the statute by the USDOL, the agency charged with administering the JTPA. *Id.* at 843-44, 104 S.Ct. at 2781-83.

Likewise, our review of factual findings by the Secretary is

---

[12]In the final determination issued by the USDOL, the NOSDA was also charged with conflicts of interest in the administration of JTPA grant funds. The ALJ determined that a conflict of interest had existed but concluded that the JTPA did not prohibit such conflicts of interest during the period in question. *See* 29 U.S.C. § 1574(a)(3)(G) (1994). Therefore, the ALJ concluded that such conflicts of interest did not justify disallowance of the challenged expenses. We have no occasion to reconsider this decision.

tempered by respect for the expertise of the administrative agency. "Substantial evidence" is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938); *accord Pierce v. Underwood,* 487 U.S. 552, 564-65, 108 S.Ct. 2541, 2550, 101 L.Ed.2d 490 (1988). This standard contemplates something less than a preponderance of the evidence, and the mere fact that a different conclusion might be drawn from the evidence does not necessarily preclude a determination that an administrative decision was supported by substantial evidence. *Consolo v. Federal Maritime Comm'n,* 383 U.S. 607, 620, 86 S.Ct. 1018, 1026, 16 L.Ed.2d 131 (1966).

## B.

First, the Secretary concluded that NOCC and TTD had failed to maintain accurate and reliable records, as required by the JTPA. During the period in question, the JTPA required grant recipients to keep financial records sufficient to permit the preparation of reports required by the act, and sufficient to permit the tracing of grant funds to insure that the funds were not spent unlawfully. *See* 29 U.S.C. § 1575(a)(1) (1982); 20 C.F.R. § 629.35(a) (1986).[13] The NOSDA, NOCC, and TTD disregarded this obligation with reckless abandon.

The Secretary's factual findings are supported by more than substantial evidence. In its audit report, upon which the

---

[13]Although Congress has subsequently amended the JTPA to require specific reports from grant recipients, these requirements do not govern the instant case. *See* 29 U.S.C. § 1575 (1994).

7

Secretary relied in denying the challenged expenses, the USDOL found that the financial records maintained by NOCC and TTD were so irregular and unreliable that it was impossible to determine with any certainty whether JTPA grant funds had been allocated lawfully. The Secretary concluded that the NOSDA, acting through its subgrantees, had violated the JTPA by failing to maintain accurate and reliable financial records.

The state does not contest the accuracy of these factual findings but argues that it should be granted a special exemption from the JTPA's accounting requirements. Because fixed-unit-price contracts compensate the service provider only for successful performance, guaranteeing a flat fee for each participant who successfully graduates from the training program, the state avers that service providers have no obligation to maintain financial records under such fixed-unit-price contracts. This creative interpretation is unsupported by the plain language of the JTPA, the administrative regulations implementing the act, or previous judicial interpretations of the JTPA.

The plain language of 29 U.S.C. § 1575(a)(1) is unambiguous, requiring *all* recipients to maintain accurate and reliable records. Under such circumstances, when a statute is plain and unambiguous, we "give effect to the unambiguously expressed intent of Congress." *Chevron,* 467 U.S. at 843, 104 S.Ct. at 2781; *accord United Servs. Auto. Ass'n v. Perry,* 102 F.3d 144, 146 (5th Cir.1996). The plain language of the JTPA, and the administrative regulations promulgated thereunder, do not recognize a distinction between

8

fixed-unit-price contracts and cost-reimbursement contracts. Consequently, neither do we.

Accordingly, JTPA grant recipients may not arrogate to themselves the authority to distinguish between fixed-unit-price contracts and cost-reimbursement contracts, nor may they disregard with impunity the accounting requirements explicitly prescribed by federal law. We decline the invitation to create an exemption from the JTPA by judicial fiat.[14]

The state cannot excuse its own gross negligence and that of its subrecipients by inventing exceptions from the accounting and record-keeping requirements of the JTPA. Substantial evidence supports the conclusion that Louisiana utterly failed to maintain accurate and reliable financial records, in violation of 29 U.S.C. § 1575(a)(1), and the Secretary correctly held that such nonfeasance constitutes a violation of the JTPA. Therefore, the Secretary properly denied the challenged expenses and ordered the state to repay the disallowed expenses. *See Montgomery County v. Department of Labor,* 757 F.2d 1510, 1513 (4th Cir.1985); *City of Oakland v. Donovan,* 703 F.2d 1104, 1107 (9th Cir.), *modified,* 707 F.2d 1013 (9th Cir.1983).[15]

---

[14]Perhaps there are legitimate reasons to recognize a distinction between fixed-unit-price contracts and cost-reimbursement contracts for purposes of the JTPA, but these arguments are properly addressed to Congress, not to this court.

[15]Although *Montgomery County* and *City of Oakland* were decided under the Comprehensive Employment and Training Act ("CETA"), 29 U.S.C. §§ 801-999 (repealed 1982), that statute was superseded by the JTPA. Therefore, the relevant provisions of CETA and the JTPA are effectively identical.

Record keeping is at the heart of the federal oversight and evaluation provisions of [JTPA] and its implementing regulations. Only by requiring documentation to support expenditures is the DOL able to verify that billions of federal grant dollars are spent for the purposes intended by Congress. Unless the burden of producing the required documentation is placed on recipients, federal grantees would be free to spend funds in whatever way they wished and obtain virtual immunity from wrongdoing by failing to keep required records. Neither [JTPA] nor the regulations permit such anomalous results.

*Montgomery County,* 757 F.2d at 1513. Consequently, we deny the petition and affirm the final decision of the Secretary disallowing the challenged expenses of $894,615 and requiring the state to repay these expenses from non-federal funds.

C.

In addition, the Secretary disallowed the challenged expenses because the NOSDA failed to consider the cost-effectiveness of the proposals submitted by NOCC and TTD. During the period in question, the JTPA required service delivery areas requesting federal grant funds to adopt "job training plans," *see* 29 U.S.C. § 1514(a) (1982), which would include, *inter alia,* procedures for the selection of service providers that considered past performance in job training or related activities, fiscal accountability, and ability to meet performance standards, *see* 29 U.S.C. § 1514(b)(5) (1982).

Furthermore, the JTPA specified that the "primary consideration" for selection of service providers should be the effectiveness of the service provider in delivering the necessary services, expressly citing the cost of the proposal as one variable

in this calculus.  *See* 29 U.S.C. § 1517(a) (1982).[16]  Compliance with these procurement procedures was required to ensure that all costs allocated to the grant were allowed by the JTPA.[17] Finding that the NOSDA had cavalierly disregarded these procurement procedures, the Secretary concluded that the challenged expenses of $894,615 should be disallowed.[18]

This conclusion is supported by substantial evidence.  First, the Secretary found no evidence to support the conclusion that the NOSDA had conducted a cost analysis of the grant proposals submitted by NOCC and TTD. To the contrary, the staff review committee failed to consider cost-effectiveness in preparing its

---

[16]During the period in question, JTPA procurement procedures were governed by 20 C.F.R. § 629.34 (1986).  The state contends that the procurement procedures employed by the NOSDA were consistent with applicable state and local law, as required by 20 C.F.R. § 629.34. That provision, however, expressly incorporated the requirements of 29 U.S.C. § 1517, the federal statute upon which the Secretary relied in disallowing the challenged costs. Therefore, compliance with state and local law offers no shelter to the state.

[17]"Allowable costs" under the JTPA must be "necessary and reasonable for proper and efficient administration of the program" and must be allocable to the grant under the principles provided in the JTPA. 20 C.F.R. § 629.37(a) (1986).  Costs incurred in violation of federal law are not allowable under the JTPA. *See* 20 C.F.R. § 629.37(c)(1) (1986).

[18]The state argues that the Secretary violated principles of due process by retroactively applying federal regulations concerning procurement procedures that were not enacted until years after the contracts in question were executed. *See, e.g.,* 29 U.S.C. § 1574(a)(3)(C)-(D) (1994);  20 C.F.R. § 627.420(e) (1996). This argument is without merit, as the Secretary based the final decision on statutes and regulations in effect at the time the contracts were executed.  *See* 29 U.S.C. § 1517(a) (1982);  20 C.F.R. § 629.37(a) (1986).  Consequently, the Secretary's final decision does not constitute a retroactive application of the JTPA.

evaluation of the NOCC proposal, and the proposal did not contain any budget or cost information as required by the JTPA. Instead, the NOCC proposal merely stated an estimated "slot cost," without providing any basis to determine whether the estimated cost was fair and reasonable.[19] Nevertheless, despite these omissions, and despite the fact that two voting members never even received a copy of the NOCC proposal, the OPIC summarily accepted the NOCC proposal.

Moreover, the Secretary determined that the fixed-unit-price contract awarded to NOCC for program year 1985 was not reasonable, because the NOCC was already being funded by a cost-reimbursement contract when the fixed-unit-price contract was awarded to NOCC. Indeed, the fixed-unit-price contract funded an employment workshop during the last month of the preceding cost-reimbursement contract, thereby duplicating efforts and duplicating program participants.

Under these suspect circumstances, auditors concluded that it was highly irregular to award a fixed-unit-price contract to a current contractor during the last month of a cost-reimbursement contract, without conducting any pre-award analysis of projected expenses. The Secretary concluded that these irregular procurement

---

[19]Moreover, the proposal submitted by NOCC concerned program year 1985, and NOCC performed its obligations under the contract during that program year. In defense of its procurement procedures, the NOSDA submitted a request for proposals issued by the recipient for program year 1986, and the corresponding grant proposals received for program year 1986. Because these proposals were not in direct competition with the NOCC proposal, however, the Secretary properly concluded that these documents were irrelevant to the determination of whether the NOCC proposal was fair and reasonable.

12

procedures violated the requirement that service delivery areas must consider cost-effectiveness and must determine whether grant proposals are fair and reasonable, and disallowed the challenged expenses.[20]

Likewise, the NOSDA awarded grant funds to TTD without conducting any analysis of cost-effectiveness. The grant proposal submitted by TTD for program year 1986 did not contain adequate budget information from which to determine whether the contract price was fair and reasonable; for program year 1987, the grant proposal submitted by TTD was never even provided to the auditors, who were unable to determine whether the contract price was fair and reasonable, or whether costs had even been considered by the NOSDA as required by the JTPA.[21] Therefore, the Secretary concluded that Louisiana had violated the JTPA by failing to consider the cost-effectiveness of the grant proposals submitted by TTD prior to awarding the contracts.

The state defends the procurement procedures adopted by the NOSDA, noting that subsequent surveys proved that the NOCC and TTD contracts were fair and reasonable. That is not the point. Once again, the state seeks to remedy the egregious defects in its

---

[20]The sole evidence adduced by the state to rebut this factual conclusion—oblique testimony offered by three representatives of the city—was discredited by the Secretary. After weighing all the evidence in the record, the Secretary found this self-serving testimony unpersuasive. We agree.

[21]Moreover, the auditors noted that TTD had subsequently agreed to provide identical training programs in program year 1988 for $150 less per participant than the fixed-unit-price contracts executed in program years 1986 and 1987.

13

procedures by retrospectively inventing exceptions to the JTPA. The plain language of the JTPA requires service delivery areas to consider cost-effectiveness in the decision to *award* grant funds, not to justify awards *after* those funds have been disbursed. *See* 29 U.S.C. § 1517(a) (1982). Substantial evidence supports the conclusion that the NOSDA failed to honor these procurement procedures, and the Secretary correctly disallowed the challenged expenses of $894,615.

The JTPA unambiguously mandates that service delivery areas disbursing federal grant funds must take an ounce of prevention, by determining whether grant proposals are fair and reasonable; the state cannot excuse its failure to do so merely by demonstrating that it has subsequently undertaken a pound of cure. Consequently, we deny the petition for review and affirm the final decision of the Secretary disallowing the challenged expenses of $894,615 and requiring the state to repay these expenses from non-federal funds.

### D.

Finally, Louisiana seeks to escape its obligations under the JTPA by raising a myriad of procedural objections to the USDOL audit, the decision of the ALJ, and the subsequent refusal of the Secretary to review the decision and waive repayment of the disallowed expenses. We have considered these objections and find them to be meritless.

### III.

We conclude that the final decision of the Secretary is based on substantial evidence, and that the state and the NOSDA and its

14

subgrantees cavalierly disregarded the accounting requirements and procurement procedures specified by the JTPA and the accompanying regulations. Federal grant recipients who are entrusted with public funds are bound to fulfill that public trust by discharging their duties in strict compliance with the requirements established by Congress. Accordingly, we emphasize that the procedural requirements of the JTPA are not merely hortatory ideals; they are obligatory duties. Grant recipients who, like the NOSDA and its subgrantees, fail to honor these procedural requirements, dishonor and disserve the public trust.[22]

The petition for review is DENIED, and the final decision of the Secretary of Labor is AFFIRMED.

---

[22]It is ironic that today's result shifts the burden of these disallowed expenses to the state's taxpayers. We also recognize that our decision requires the city to assume responsibility for $894,615 of disallowed expenses as a consequence of the procedural deficiencies in the grant process and the unprofessional accounting practices of its subgrantees. We express no opinion as to whether the city may seek indemnity for these expenses from its subgrantees.