**STATE OF SOUTH CAROLINA, Petitioner,**

v.

**UNITED STATES DEPARTMENT OF LABOR, Respondent.**

**No. 85–1551.**

United States Court of Appeals, Fourth Circuit.

Argued Feb. 5, 1986.

Decided July 15, 1986.

Gary D. Michaels (Krivit & Krivit, P.C., Washington, D.C., on brief), for petitioner.

Patrick D. Gilfillan, U.S. Dept. of Labor (Francis X. Lilly, Sol., of Labor, William H. DuRoss, III, Associate Sol., for Employment and Training, Harry L. Sheinfeld, Washington, D.C., Counsel for Litigation, on brief), for respondent.

Before WINTER, Chief Judge, CHAPMAN, Circuit Judge and HOUCK, United

States District Judge for the District of South Carolina, sitting by designation.

CHAPMAN, Circuit Judge:

This is a petition by the State of South Carolina pursuant to 29 U.S.C. § 817(a) (1976)[1] to review a final decision of the Secretary of Labor (the Secretary) denying review of a decision and order of an Administrative Law Judge (ALJ). The ALJ disallowed state expenditures of $75,046 made in connection with a migrant and seasonal farm worker grant under the Comprehensive Employment and Training Act of 1973 (CETA), 29 U.S.C. §§ 801–999 (1976) (as amended), and directed repayment of the disallowed expenditures out of non-CETA funds.

The determinative issue on appeal is whether the Secretary's order must be set aside and the administrative action barred because the Secretary failed to act within 120 days of the receipt of a final audit report as required by CETA § 106(b), 29 U.S.C. § 816(b) (1976). We have held our decision in abeyance pending the Supreme Court's decision in *Brock v. Pierce County*, — U.S. ——, 106 S.Ct. 1834, 90 L.Ed.2d 248 (1986). In *Pierce County*, the Court has held that the 120–day limit of § 106(b) does not bar the Secretary from pursuing and recovering misspent CETA funds. In light of *Pierce County*, we affirm.

I

The CETA grant at issue in this case was awarded to South Carolina for the period April 1, 1975 through March 31, 1976. The grant was made pursuant to Title III of the Act under the migrant farm worker program provision in the amount of $407,800. The Department of Labor and South Carolina subsequently modified the grant agreement to extend grant performance until June 5, 1976.

In the summer of 1977, the Department's Regional Audit Office in Atlanta, Georgia, initiated an audit of the grant performance of the State and its subcontractor, the South Carolina Resources Development Corporation (SCRDC). The audit was performed by a certified public accounting firm under contract to the Department. The final audit report, dated August 31, 1977, covered the grant for the period from April 1, 1975 to March 31, 1976, and questioned costs totaling $201,991. The Department's Regional Audit Office in Atlanta received the final audit report on October 11, 1977.

The State received the final audit report on February 23, 1978, from the Director of the Department's Audit Office of Operations in Washington, D.C. Through a letter dated March 1, 1978, the State indicated that it was unable to respond to the audit report by a March 16, 1978, deadline set by the Department because it needed additional time to obtain information from SCRDC. The State requested an extension until April 30, 1978, to respond to the audit report.

In May 1978, the State submitted documentation to the Department supporting the allowability of the questioned costs. However, through a letter dated May 8, 1978, the State requested another extension of time to respond to the audit report. The letter indicated that the State required the additional time because SCRDC had disbanded and officials had been unable both to locate certain records and to contact a former financial officer of the agency.

In the meantime, on October 27, 1978, Congress enacted the CETA Amendments of 1978. The Act included § 106(b) (codified at 29 U.S.C. § 816(b) (1976)), which requires that whenever the Secretary conducts an investigation, including one made pursuant to an audit, into whether a CETA grant recipient is complying with the Act or applicable regulations, the Secretary shall make a final determination "not later than 120 days after receiving the complaint." On April 3, 1979, the Department issued final regulations implementing the

---

1. The Comprehensive Employment and Training Act was repealed in 1982 and is not contained in the 1982 edition of the United States Code.

CETA Amendments of 1978. The regulations established the procedures to be followed in the investigations and included the requirement that a final determination be issued by the agency's grant officer "not later than 120 days after the filing of a complaint (or receipt of a final audit or investigation report in the absence of a complaint)...." 20 C.F.R. § 676.88(e) (1985).

The State did not submit its final response to the audit report until August 29, 1979. On September 13, 1979, the Department requested additional documentation from the State for specific costs questioned in certain exhibits to the audit report. The State did not respond until January 8, 1980, when it reported that it would be "almost impossible or at best extremely difficult" to provide the requested documentation "as a result of the manner in which the records were stored." The letter stated that the records had been stored in the basement of an office building in boxes and file cabinets which were not labeled according to content and that some of the records were water-damaged. With receipt of this letter on January 8, 1980, the grant officer had before him all of the information that he required to make a determination on the questioned CETA expenditures.[2]

On August 18, 1981, the grant officer issued an initial determination on the questioned expenses. On September 23, 1981, the grant officer issued a final determination finding that $134,789 of the $201,991 originally questioned by the auditors was to be disallowed and subject to collection. The final determination letter made clear that the Secretary was proceeding under the regulations effective on April 3, 1979.

The State requested a hearing on the cost disallowances of the final determination. On February 12, 1985, after several years of postponements and protracted proceedings, the ALJ issued a Decision and Order disallowing costs of $75,046 and ordering repayment of this amount out of non-CETA funds. The State filed exceptions to this order with the Secretary, who declined to accept the case for review. The ALJ's decision thus became the final decision and action of the Secretary. 29 U.S.C. § 817 (1976); 20 C.F.R. § 676.91(f) (1985).

## II

The State contends that the Secretary's failure to issue a final determination within 120 days of the audit report as required by § 106(b) constitutes a jurisdictional bar to any action taken by the Secretary to collect misspent CETA funds. In particular, the State argues that the statutory language providing that the Secretary "shall" make a final determination "not later than 120 days after receiving the complaint" demonstrates a congressional intent to create an absolute and mandatory duty for the Secretary to act within the time period. In *Brock v. Pierce County*, the Supreme Court has directly rejected this contention, holding that

CETA's requirement that the Secretary "shall" take action within 120 days does not, standing alone, divest the Secretary of jurisdiction to act after that time. There is simply no indication in the statute or its legislative history that Congress intended to remove the Secretary's enforcement powers if he fails to issue a final determination on a complaint or audit within 120 days.

—— U.S. at ——, 106 S.Ct. at 1842.

The State also argues that even if the statute itself does not establish a jurisdictional bar, the Secretary's own regulations should be interpreted to create such a bar. *See* 20 C.F.R. § 676.88(e) (1985). A second alternative position is that the 120–day limit of § 106(b) should be treated as a statute of limitations which is subject to tolling depending upon the circumstances of any given dispute. Again, the Supreme Court has considered and rejected both of these

---

**2.** Counsel for the Department admitted this point at oral argument. In addition, there is no indication in the record that South Carolina requested any more time extensions or attempted to submit any more evidence after January 8, 1980, and before the issuance of the grant officer's final determination in September, 1981.

arguments in *Pierce County,* —— U.S. at ——, 106 S.Ct. at 1841–42.

■ In light of the Supreme Court's authoritative disposition of this issue, we hold that the Secretary is not barred from recovering misspent CETA funds in this case, even though the final determination was not issued within 120 days of the receipt of the audit report.

### III

■ The State has raised three additional arguments on appeal as grounds for wholly or partially setting aside the order of the Secretary. First, the State argues that it was unduly prejudiced by the Secretary's delay in issuing his final determination. The State contends that the delay resulted in both the nonavailability of witnesses as former SCRDC employees moved elsewhere, and the loss of documentary records because of storage problems. Initially, we note that the grant recipient has the burden to preserve and maintain adequate records in order to aid the federal government in administering the CETA program. 29 U.S.C. § 835(a) (1976); *Montgomery County v. Department of Labor,* 757 F.2d 1510, 1512–13 (4th Cir.1985); *see also* 20 C.F.R. § 676.37(a)(3) (1985). The State cannot, therefore, claim that the Secretary was somehow at fault for the State's improper storage of its records. In addition, as the Supreme Court notes in *Pierce County,* if the State felt that it was being prejudiced by the Secretary's alleged foot-dragging, the State's remedy was to initiate a lawsuit under the Administrative Procedure Act, 5 U.S.C. § 706(1) to compel agency action. *See Pierce County,* —— U.S. at —— n. 7, 106 S.Ct. at 1839 n. 7.

■ Second, the State argues that the Secretary's order must be set aside because the ALJ did not afford the State a hearing as required by § 106(b), its accompanying regulations, and the Administrative Procedure Act. Although the State did indeed request a hearing, it is plain that in its own Final Written Brief Submission to the ALJ, the State, in effect, waived any right it had to an oral hearing before the ALJ. Moreover, on appeal of the ALJ's decision to the Secretary, the State failed to raise any direct objection to the lack of an oral hearing. It is well established that parties to an agency proceeding must raise "at the time appropriate under [the agency's] practice" all issues which it intends to assert on appeal. *United States v. Tucker Truck Lines,* 344 U.S. 33, 37, 73 S.Ct. 67, 69, 91 L.Ed. 54 (1952); *see also Senn Trucking Co. v. I.C.C.,* 560 F.2d 1179, 1182 (4th Cir.1977); *First Citizens Bank and Trust Co. v. Camp,* 409 F.2d 1086, 1088–89 (4th Cir.1969). Since CETA regulations require all exceptions to ALJ decisions to be raised before the Secretary, 20 C.F.R. § 676.91(f) (1985), we find that the State waived any right that it might have had to a hearing in this case.

Finally, the State challenges the Secretary's finding that the State was not entitled to a 10% administrative cost variance provided for in the subcontract between the State and SCRDC. The State contends that the 10% variance entitles the State to an $8,156 reduction from the $34,539 that the Secretary disallowed for SCRDC's administrative costs overrun. *See* 29 C.F.R. § 97.256(d)(1) (1975). The Secretary found that, even assuming the Department was a party to this subcontract, the 10% variance was not available to the State. The Secretary based its decision on the auditor's report, which indicated that SCRDC had exceeded the administrative expenditure budgeted by the grant by more than 10%. The conclusions of the audit report on which the Secretary relied constitute substantial evidence supporting the Secretary's decision. Consequently, we refuse to set aside the Secretary's findings. 29 U.S.C. § 817(b) (1976); *see City of Oakland v. Donovan,* 703 F.2d 1104, 1106 (9th Cir.1983).

The petition to review is denied.