02-4882-ag
Zhong v. U.S. Dep't of Justice, Attorney General Gonzales

# UNITED STATES COURT OF APPEALS

# FOR THE SECOND CIRCUIT

August Term, 2006

_____

At a stated Term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 31st day of May, two thousand seven,

Present:

Hon. Dennis Jacobs,
            Chief Judge,
Hon. Guido Calabresi,
Hon. José A. Cabranes,
Hon. Chester J. Straub,
Hon. Rosemary S. Pooler,
Hon. Robert D. Sack,
Hon. Sonia Sotomayor,
Hon. Robert A. Katzmann,
Hon. B.D. Parker,
Hon. Reena Raggi,
Hon. Richard C. Wesley,
Hon. Peter W. Hall,
            Circuit Judges.


- - - - - - - - - - - - - - - - - - - - - - -x
LIN ZHONG,

                  Petitioner,

      - v.-                                02-4882-ag

UNITED STATES DEPARTMENT OF JUSTICE,
& ATTORNEY GENERAL GONZALES,

                  Respondent.
- - - - - - - - - - - - - - - - - - - - - - -x

Respondent filed a petition for rehearing in banc from the opinion filed on August 8, 2006. A poll on whether to rehear this case in banc was conducted among the active judges of the court upon the request of an active judge of the court. Because a majority of the court's active judges voted to deny rehearing in banc, rehearing in banc is hereby DENIED. Amended opinions were issued by the panel on January 17, 2007.

Judge Calabresi concurs in the order denying rehearing in banc and files an opinion. Chief Judge Jacobs dissents from the order denying rehearing in banc and files an opinion in which Judges Cabranes and Raggi join.

FOR THE COURT:
Thomas W. Asreen, Acting Clerk


By: Richard Alcantara, Deputy Clerk

CALABRESI, *Circuit Judge*, concurring in the denial of rehearing *en banc*:

In his strong dissent, the Chief Judge touches on two separate issues. Both are important and deserve serious discussion. The first is primarily of interest to this court and circuit. It asks whether the majority in *Zhong v. U.S. Dep't of Justice*, 480 F.3d 104 (2d Cir. 2007), *amending and superseding Zhong v. U.S. Dep't of Justice*, 461 F.3d 101 (2d Cir. 2006), ignored our rules making previous circuit precedent binding. The second is of more general interest. It questions whether the *Zhong* majority was correct in its reading of the relevant statute and Supreme Court decisions when it held that exhaustion of issues — as against categories of claims — is a mandatory rather than a jurisdictional requirement.[1]

**I**

In *Zhong*, the government did not point out that the petitioner had failed to exhaust certain issues before the Board of Immigration Appeals ("BIA"), and instead, fully briefed and argued the *merits* of those unexhausted issues to us. As a result, the *Zhong* panel was faced with the question of whether the requirement of issue exhaustion was jurisdictional and had to be raised by the panel *sua sponte*.

The Chief Judge contends that the *Zhong* panel should have treated our court's decision in *Foster v. INS*, 376 F.3d 75 (2d Cir. 2004) (per curiam), as controlling on this point. *See dissenting op.* at 3 (criticizing the *Zhong* majority for "[d]eparting from this well-settled precedent"). It is true that the *Foster* opinion contains language which might be taken to suggest that 8 U.S.C. § 1252(d)(1) imposes a jurisdictional issue exhaustion requirement. But because,

---

[1] Stated differently, this second question asks whether, in the light of 8 U.S.C. § 1252(d)(1) and the relevant regulations and case law, issue exhaustion is a matter of statutory jurisdiction, or, instead, is a mandatory non-jurisdictional requirement that may be subject to a few, limited, exceptions.

in *Foster*, the government pointed out the petitioner's failure to exhaust issues, *see Foster*, 376 F.3d at 77, any "jurisdictional" language used by that panel was not necessary to the decision, and as such was not binding on later panels.[2] Significantly, both members of our court who served on the *Foster* panel and wrote that decision have consistently rejected the Chief Judge's reading of *Foster* as binding.[3] They have authorized me to say that they view the jurisdictional language in *Foster* as dicta, and that they believe they indicated as much in *Abimbola v. Ashcroft*, 378 F.3d 173, 180 (2d Cir. 2004), which they heard on the same day as *Foster*.[4]

Given that *Foster* was not controlling, and that no other binding precedent on point was, or has been, cited to us it was proper for the *Zhong* panel to treat as an open question the precise nature of this court's issue exhaustion requirement.

In view of the Supreme Court's series of recent and increasingly powerful opinions

---

[2] *See Arbaugh v. Y & H Corp.*, 546 U.S. 500, 126 S. Ct. 1235, 1242-43 (2006) (noting that "[j]urisdiction . . . is a word of many, too many, meanings" and that the Supreme Court, "no less than other courts, has sometimes been profligate in its use of the term," but cautioning that "unrefined dispositions . . . should be accorded no precedential effect on the question whether the federal court had authority to adjudicate the claim in suit" (citations and internal quotation marks omitted)); *cf. Paese v. Hartford Life Accident Ins. Co.*, 449 F.3d 435, 443, 446 (2d Cir. 2006) (noting that "our case law has been somewhat casual when discussing the judicially-created exhaustion requirements under section 502(a)(1)(B) [of ERISA]" and acknowledging that this court has "occasionally use[d] 'jurisdictional' language when discussing the exhaustion requirements," but holding "that a failure to exhaust ERISA administrative remedies is not jurisdictional, but is an affirmative defense"); *United States v. Canova*, 412 F.3d 331, 347-48 (2d Cir. 2005) (acknowledging that the Supreme Court, our court, and each of our sister circuits, had previously referred to the filing limit of Fed. R. Crim. P. 33 as "jurisdictional," but recognizing that "[i]n light of [the Supreme Court's] discussion of the ambiguity in the word 'jurisdictional,' it might be appropriate for us to explore the meaning of our past characterization of Rule 33's filing limitations as 'jurisdictional'").

[3] The third judge on the panel was a visiting judge and as such has had no occasion to express his views on the matter.

[4] *See Abimbola*, 378 F.3d at 180 (suggesting that the jurisdictional effect of lack of exhaustion where the government fails to object was an open issue).

cautioning lower federal courts against conflating mandatory with jurisdictional prerequisites, *see, e.g.*, *Day v. McDonough*, 547 U.S. 198, 126 S. Ct. 1675, 1681-82 (2006); *Arbaugh*, 126 S. Ct. at 1238, 1245; *Eberhart v. United States*, 546 U.S. 12, 126 S. Ct. 403, 405 (2005) (per curiam); *Kontrick v. Ryan*, 540 U.S. 443, 455-56 (2004), and because there was no binding precedent on the question of issue exhaustion, the *Zhong* majority properly undertook the task of carefully determining whether our court's issue exhaustion requirement should *truly* be treated as jurisdictional. *See Eberhart*, 126 S. Ct. at 405 ("Clarity would be facilitated . . . if courts and litigants used the label 'jurisdictional' not for claim-processing rules, but only for prescriptions delineating the classes of cases (subject-matter jurisdiction) and the persons (personal jurisdiction) falling within a court's adjudicatory authority." (citation and internal quotation marks omitted)).

The *Zhong* panel believed that some of the same arguments it found compelling with respect to issue exhaustion could be made about *claim* exhaustion and whether that requirement is jurisdictional. But because there were longstanding holdings of our court that, in the immigration context, claim exhaustion is a jurisdictional requirement, *see Beharry v. Ashcroft*, 329 F.3d 51, 59 (2d Cir. 2003); *see also Karaj v. Gonzales*, 462 F.3d 113, 119 (2d Cir. 2006), the majority in *Zhong* properly deemed itself bound. The majority in *Zhong* concluded that it could, and so should, reach the correct result with respect to the question that remained open — *i.e.*, the nature of issue exhaustion — even as it honored longstanding precedent on claim exhaustion. Although it noted some conceptual difficulties with drawing such a distinction, it concluded the distinction was a permissible one.

This was because our circuit precedents have often distinguished between issues and

categories of relief in exhaustion doctrine. *Zhong*, 480 F.3d at 119 n.18 (citing cases). Moreover, there is a profoundly practical reason for drawing this line between issue and claim exhaustion. If an exhaustion requirement is treated as implicating subject-matter jurisdiction, then a decision on an issue or claim that turns out not to have been adequately exhausted below would be subject to being attacked collaterally by interested third parties, because the court would have had no authority to act at all. *See Arbaugh*, 126 S. Ct. at 1240 ("The objection that a federal court lacks subject-matter jurisdiction, see Fed. Rule Civ. Proc. 12(b)(1), may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment."). And that, together with the fact that subject-matter jurisdiction cannot be waived, would impose on courts of appeals "an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from either party." *Arbaugh*, 126 S. Ct. at 1237. This, in the context of issue exhaustion in immigration cases in this circuit, would impose an unbearable burden.

Whereas the judges of this court have little difficulty examining the administrative record and determining whether particular categories of relief — *i.e.*, claims — have been raised, it would be virtually impossible, as a practical matter, for us thoroughly to search through the record in *every case* — especially in cases being decided through our Non-Argument Calendar[5] or in summary fashion — in order to discern whether all relevant issues were adequately raised before the agency. If issue exhaustion is mandatory but not jurisdictional, by comparison, we are able — indeed generally bound — to refuse to consider issues that we discover were not raised below, but we do not have to undertake the unmeetable task of meticulously searching the record

---

[5] *See* Second Circuit Interim Local Rule 0.29 (establishing procedures for the Non-Argument Calendar).

in the thousands of immigration cases we review, in order to avoid what could be disastrous, much later, collateral attacks.

Obviously, these practical considerations would not allow us to assume jurisdiction where it does not exist. But given what is at stake, it is important to avoid carelessly treating an exhaustion rule as depriving the reviewing court of any power to hear the case, when closer inspection would reveal the rule to be mandatory but not jurisdictional.

Interestingly — although not surprisingly, given the absence of an issue exhaustion requirement in the language of § 1252(d)(1), and the practical difficulties that deeming issue exhaustion "jurisdictional" would present — some of the circuits which the Chief Judge cites as coming out the opposite way from *Zhong* on issue exhaustion and jurisdiction have indicated that they thought this was a terrible idea. But they were bound by earlier precedents in their circuits and could do nothing else. *See, e.g.*, *Etchu-Njang v. Gonzales*, 403 F.3d 577, 581-82 (8th Cir. 2005) (noting that "the plain language of § 1252(d)(1) could be read to require only exhaustion of remedies available as of right," but finding itself bound by prior Eighth Circuit precedent); *Sousa v. INS*, 226 F.3d 28, 31 (1st Cir. 2000) (stating that "[i]f we were writing on a clean slate, it would be very tempting to treat" the failure to exhaust issues "as something less than a jurisdictional objection," but concluding that, "[w]hatever our own views, we are bound by precedent to apply the INA exhaustion requirement in a more draconian fashion").[6] As the

---

[6] These circuits, in finding, based on their own prior precedents, that they were bound to treat issue exhaustion as jurisdictional, also suggested that exceptions to the issue exhaustion requirement might nevertheless be permitted. *See Sousa*, 226 F.3d at 32 ("Even where statutes impose an exhaustion requirement the Supreme Court has, despite the rhetoric of jurisdiction, carved out exceptions."); *see also Etchu-Njang*, 403 F.3d at 581-85 ("[A]ssum[ing] for the sake of argument that there may be exceptions to the issue exhaustion requirement."). By allowing such "exceptions," these circuits have, in effect, not been treating the issue exhaustion requirement as truly jurisdictional (despite the words they were bound by precedent to use).

opinion in *Zhong* clearly states, *see* 480 F.3d at 107, 120 n.20, it was because *we* were *not* bound by precedent that the majority in *Zhong* could reach what I will argue in Part II was the correct result as to issue exhaustion.

I do not doubt that the Chief Judge and his fellow dissenters read *Foster* as being a holding on this point. That is without question their right. But, in the end, it is not up to one judge, or even three judges, to say what is holding and what is not; that is ultimately up to the majority of the court, and the whole court — perhaps guided by the *Foster* panel — has voted overwhelmingly that review *en banc* of *Zhong* on this ground is not warranted.

## II

The second question, though perhaps less fraught with emotion, is the more important one: Did the majority in *Zhong*, in holding that issue exhaustion, though mandatory, is not jurisdictional, correctly interpret what the statute and relevant case law require?

## A

Section 1252(d)(1), the judicial review provision analyzed in *Zhong*, states that we may review a final order of removal only after "the alien has exhausted all administrative remedies available to the alien as of right." That language typically means that courts do not have jurisdiction to hear a petitioner who has not first brought his case before the available

---

We, of course, have similarly allowed for such "exceptions" in the context of claim exhaustion. *See Gill v. INS*, 420 F.3d 82, 87-88 (2d Cir. 2005) (stating willingness to hear unexhausted claims in order to prevent "manifest injustice"); *see also Marrero Pichardo v. Ashcroft*, 374 F.3d 46, 54 (2d Cir. 2004) (holding that, "notwithstanding a . . . petitioner's failure to exhaust his claims before the BIA," such failure may be excused where necessary to avoid "manifest injustice"). The Chief Judge, consistently with the position he takes in this case, dissented from *Gill*, and, in that dissent, also criticized the reasoning of *Marrero Pichardo*. *See Gill*, 420 F.3d at 95-97 (Jacobs, *J.*, dissenting). But *Gill* and *Marrero Pichardo* nonetheless remain the law of the circuit, which is the only thing *Zhong* said about those cases.

administrative agency. *See Zhong*, 480 F.3d at 118 n.18, 119, 120-21; *see also Coleman v. Thompson*, 501 U.S. 722, 732 (1991) (discussing the requirement, found in 28 U.S.C. § 2254(b)(1) (1990), *amended by* Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, § 104(2)(3), 110 Stat. 1214, that a habeas petitioner "exhaust[] the remedies available in the courts of the State," and interpreting it to mean that "[a] habeas petitioner who has defaulted his federal claims in state court meets the technical requirements for exhaustion; there are no state *remedies* any longer 'available' to him" (emphasis added)). It does not, however, in itself proscribe judicial review of *issues* not raised in the course of exhausting those administrative remedies.[7] And as the Supreme Court has observed, "requirements of administrative issue exhaustion are largely creatures of statute." *Sims v. Apfel*, 530 U.S. 103, 107-08 (2000); *see also Zhong*, 480 F.3d at 121 (explaining how, "as the Supreme Court observed in [*Sims*, 530 U.S. at 107-08], Congress has, in other contexts, expressly written *issue* exhaustion requirements into statutes" when it wished to make issue exhaustion jurisdictional (emphasis in original)).

Of course, even in cases in which no *statutory* issue exhaustion requirement exists, well-settled principles of administrative law may lead a court to impose a *mandatory* — though non-

---

[7] It is useful to compare the language of § 1252(d)(1), which makes no mention of issue exhaustion, with the language that Congress has used in other statutes. *See Woelke & Romero Framing, Inc. v. NLRB*, 456 U.S. 645 (1982) (holding that the court of appeals lacked jurisdiction to review objections not raised before the National Labor Relations Board because a statute expressly provided for a jurisdictional issue exhaustion requirement); *see id.* at 665 (quoting 29 U.S.C. § 160(e) (1982 ed.), which provided that "no *objection* that has not been urged before the Board . . . shall be considered by the court" (emphasis added)); *see also Federal Power Comm'n v. Colorado Interstate Gas Co.*, 348 U.S. 492, 497 (1955) (holding that section 19(b) of the Natural Gas Act, which provided that "[n]o *objection* to the order of the Commission shall be considered by the court [of appeals] unless such objection shall have been urged before the Commission . . ." imposed a statutory issue exhaustion requirement (emphasis added)).

jurisdictional — issue exhaustion requirement. And this is most likely to happen when an agency's own regulations require issue exhaustion in administrative appeals, for then "courts reviewing agency action [will] regularly ensure against the bypassing of that requirement by refusing to consider unexhausted issues." *Sims*, 530 U.S. at 108. Accordingly, since the BIA's regulations do require issue exhaustion, *see* 8 C.F.R. § 1003.3(b), our court has long held that issue exhaustion is mandatory. *See Zhong*, 480 F.3d at 119 ("[O]ur court has consistently applied an issue exhaustion requirement to petitions for review from the BIA.").[8]

But the Chief Judge's dissent moves well past these uncontroversial propositions, by seeking to transform our judicially-imposed issue exhaustion rule into a jurisdictional requirement. In so doing, it conflates two separate questions: (1) whether § 1252(d)(1) itself imposes a *statutory* jurisdictional issue exhaustion requirement; and (2) whether, in the absence of any statutory requirement, we have, nonetheless, ourselves imposed one. The Chief Judge appears to argue, in effect, that because "our court has consistently applied an issue exhaustion requirement," *dissenting op.* at 1, such requirement must necessarily be jurisdictional rather than mandatory. Alternatively, the Chief Judge contends that § 1252(d)(1) should be read to include a

---

[8] For an example of our treatment of exhaustion requirements as "mandatory" but not "jurisdictional," see *Handberry v. Thompson*, 436 F.3d 52, 59 (2006), in which we interpreted as mandatory, but not jurisdictional, the language of the Prison Litigation Reform Act of 1995 ("PLRA"), which provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner . . . until such administrative remedies as are available are exhausted." Although we had previously held that exhaustion under the PLRA is "mandatory," *Handberry* held such exhaustion to be non-jurisdictional in light of the fact that the PLRA did not expressly describe the exhaustion requirement as jurisdictional. *See also Jones v. Bock*, 127 S. Ct. 910, 918, 921 (2007) (holding that, while "[t]here is no question that exhaustion is mandatory under the PLRA," the "failure to exhaust is an affirmative defense"). Compare the PLRA's exhaustion requirement to § 1252(d)(1), which also does not expressly provide for an *issue* exhaustion requirement at all, much less say that any such requirement would be jurisdictional.

*jurisdictional* issue exhaustion requirement — even though the text of the statute does not include one — because the agency's regulation requires issue exhaustion during administrative appeals. Both lines of argument are unpersuasive.

In *Sims*, the Supreme Court noted that courts often impose mandatory issue exhaustion rules when the agency's own regulations require the exhaustion of issues in administrative appeals. 530 U.S. at 108. The Court then cited approvingly, as examples of such issue exhaustion rules at work, the Fourth Circuit's decision in *South Carolina v. U.S. Dep't of Labor*, 795 F.2d 375, 378 (4th Cir. 1986), and the Ninth Circuit's opinion in *Sears, Roebuck and Co. v. FTC*, 676 F.2d 385, 398 n.26 (9th Cir. 1982). Significantly, both of those opinions treated issue exhaustion as mandatory, but not jurisdictional.

In *South Carolina*, the Fourth Circuit held that, because the state had failed to exhaust certain issues, the state had *waived* those issues. 795 F.2d at 378. Similarly, in *Sears*, the Ninth Circuit stated that, in considering whether the party had exhausted issues, what was at stake was whether the party had "waived reliance on them." 676 F.2d at 397-98. Moreover, the Ninth Circuit in *Sears* explained that "a reviewing court will refuse to consider contentions not presented before the administrative proceeding at the appropriate time," except in "*exceptional circumstances*." *Id.* at 398 (emphasis added). And, the fact that the Ninth Circuit treated " exceptional circumstances" as relevant at all is, of course, inconsistent with a truly jurisdictional requirement. We can readily conclude that the *Sears* and *South Carolina* courts did not think that what was at play in those cases was jurisdiction.

Significantly, the *Sims* Court cited *Sears* and *South Carolina* with approval as examples of cases in which courts properly imposed issue exhaustion requirements even in the absence of

express statutory language. Since those cases, like the majority in *Zhong*, treated issue exhaustion as mandatory but not jurisdictional, we have every reason to believe that the Supreme Court endorsed that treatment as well.

The Chief Judge's dissent relies on *Jones v. Bock*, 127 S. Ct. 910 (2007), and *Woodford v. Ngo*, 126 S. Ct. 2378 (2006), for the proposition that "exhaustion of administrative remedies" means whatever an agency, through its regulations, says it means. *See dissenting op.* at 4-7. In other words, despite the fact that § 1252(d)(1) contains no jurisdictional issue exhaustion requirement, the Chief Judge would have us treat the BIA's regulations as if they were themselves the statute. And, equally importantly, he wants us to read the agency regulations requiring issue exhaustion as if they made such exhaustion jurisdictional rather than mandatory.

One may doubt whether an administrative agency can either confer jurisdiction on courts or deprive courts of it. *Cf. Kontrick*, 540 U.S. at 452 ("Only Congress may determine a lower federal court's subject-matter jurisdiction."). One may certainly doubt it in the absence of any *express* authorization to that effect by Congress. But one need not reach those questions to agree with the holding in *Zhong*. For the agency regulations dealing with issue exhaustion in the immigration context do not themselves speak in clearly jurisdictional terms. Rather, the administrative regulations use language that can readily be read to make issue exhaustion mandatory, which is exactly how *Zhong* reads it. *See Zhong*, 480 F.3d at 121-22.

*Jones* and *Woodford* do not affect this result.[9] In *Woodford*, the Supreme Court held that "proper exhaustion" under the PLRA's non-jurisdictional exhaustion requirement "demands

_____

[9] The PLRA's exhaustion requirement is a non-jurisdictional affirmative defense, *see Jones*, 127 S. Ct. at 921. *Jones* and *Woodford*, therefore, do not address the ability an agency to expand or diminish a court's *jurisdiction*.

compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure." *Woodford*, 126 S. Ct. at 2386. Fair enough, but this does not make such deadlines jurisdictional. And when Congress has intended to make procedural rules jurisdictional it has, itself, spoken to that effect. *See supra* note 7. The fact that it did not do so in § 1252(d)(1), then, indicates that no such jurisdictional requirement was intended. And it is Congress's expressed intent, and not the agency's procedures, that must govern the statutory meaning of § 1252(d)(1), and guide courts in making their own jurisdictional determinations.

## B

The Chief Judge, in his dissent, expresses the fear that, as a result of *Zhong*, all sorts of issues may be considered on appeal which, under the statute and the BIA regulations, ought not to be reviewed. I can sympathize with his worry, but it would only become a valid concern if *Zhong* were to be misapplied. And on a question like that, the proof of the pudding is always in the eating.

Since the opinion in *Zhong* came down, *Zhong* has been applied and cited in any number of cases. *See Lewis v. Gonzales*, 481 F.3d 125, 132 (2d Cir. 2007); *Steevenez v. Gonzales*, 476 F.3d 114 (2d Cir. 2007); *Karaj v. Gonzales*, 462 F.3d 113, 119 n.2 (2d Cir. 2006); *Xiao Ji Chen v. U.S. Dep't of Justice*, 471 F.3d 315, 320 n.1 (2d Cir. Dec. 7, 2006), *amending and superseding Xiao Ji Chen v. U.S. Dep't of Justice*, 434 F.3d 144 (2d Cir. Jan. 6, 2006); *Wilson v. Gonzales*, 471 F.3d 111, 123 (2d Cir. 2006); *see also Jin Feng Gao v. Bureau of Citizenship and Immigration Srvs.*, 2007 WL 1233598 (2d Cir. Apr. 26, 2007) (summary order); *Chai Li v. Gonzales*, 2007 WL 1206943 (2d Cir. Apr. 25, 2007) (summary order); *Ahmed v. INS*, 2007 WL

1180417 (2d Cir. Apr. 20, 2007) (summary order); *Juan Lin v. Bureau of Citizenship and Immigration Srvs.*, 2007 WL 11099272 (Apr. 13, 2007) (summary order); *Bah v. Gonzales*, 2007 WL 1113091 (Apr. 5, 2007) (summary order); *Guo Zhi Lin v. U.S. Att'y Gen.*, 2007 WL 1113011 (Apr. 5, 2007) (summary order); *Xiu Zhen Pan v. U.S. Att'y Gen.*, 2007 WL 926710 (2d Cir. Mar. 23, 2007) (summary order); *Yee Ying Li v. U.S. Dep't of Justice*, 2007 WL 869232 (2d Cir. Mar. 21, 2007) (summary order); *Gjuraj v. Gonzales*, 2007 WL 869223 (2d Cir. Mar. 21, 2007) (summary order); *Purwanto v. Gonzales*, 2007 WL 786349 (2d Cir. Mar. 16, 2007) (summary order); *Lhamo v. Bd. of Immigration Appeals*, 2007 WL 247718 (2d Cir. Jan. 25, 2007) (summary order); *Rong Zheng v. U.S. Att'y Gen.*, 2007 WL 186667 (2d Cir. Jan. 22, 2007) (summary order); *Kapllaj v. Gonzales*, 2006 WL 3770881 (2d Cir. Dec. 13, 2006) (summary order); *Hayat v. Gonzales*, 2006 WL 3326772 (2d Cir. Nov. 14, 2006) (summary order); *Sun Hai Jiang v. U.S. Dep't of Justice*, 2006 WL 3326756 (2d Cir. Nov. 15, 2006) (summary order); *Kuang Ju Zheng v. Gonzales*, 2006 WL 3018146 (2d Cir. Oct. 23, 2006) (summary order); *Ya-Ling v. Gonzales*, 198 Fed. Appx. 120, 122 (2d Cir. Sept. 29, 2006) (summary order); *Fang Yi He v. Gonzales*, 198 Fed. Appx. 88, 89 (2d Cir. Sept. 20, 2006) (summary order); *Qiu Feng Chen v. Gonzales*, 2006 WL 2620348 (2d Cir. Sept. 12, 2006) (summary order); *Xiao Lian Jiang v. Gonzales*, 2006 WL 2567699 (2d Cir. Sept. 6, 2006) (summary order); *Makeka v. Gonzales*, 2006 WL 2494351 (2d Cir. Aug. 29, 2006) (summary order).

In every one of these cases, *Zhong* has been correctly applied to deny consideration where the issue was not brought before the BIA — and to do so because raising such issues was

mandatory, even though not jurisdictional.[10]  In other words, far from the sky falling in, it is still there, and is shining bright.

* * * *

In the end the question in *Zhong* is a quite simple one.  (1) Given the Supreme Court's powerful statements that courts should be reluctant to make issues jurisdictional rather than mandatory unless statutory language requires it, *see Day*, 126 S. Ct. at 1681-82; *Arbaugh*, 126 S. Ct. at 1245; *Eberhart*, 126 S. Ct. at 405; *Kontrick*, 540 U.S. at 455-56; *see also Sims*, 530 U.S. at 107-08; (2) given the fact that our precedents do not compel us to make *issue* exhaustion in immigration cases jurisdictional; (3) given the enormous burden that calling issue exhaustion jurisdictional would in practice impose on courts like ours which are deluged with those cases; and finally, (4) given the very small — if any — differences in results that flow from calling issue exhaustion mandatory but not jurisdictional,[11] is it permissible and appropriate to read the agency regulations under § 1252(d)(1) as making issue exhaustion mandatory but not jurisdictional.  The majority in *Zhong* said that it was.  The overwhelming majority of our court has opted not to review that decision *en banc*.  With great respect for the dissenting views, I believe that decision was exactly right.

---

[10] The only exception we have found since *Zhong* is *You Jiang v. Gonzales*, 2007 WL 1113527 (2d Cir. Apr. 3, 2007) (summary order) (reviewing unexhausted issue in light of government's waiver), and I do not know whether the facts in *You Jiang* might have permitted review under the exceptions that some courts have read into jurisdictional language.  *See supra* note 6.

[11] Especially in view of the "exceptions" to jurisdictional bars that courts using jurisdictional language have created.  *See supra* note 6.

DENNIS JACOBS, Chief Judge, with whom JOSÉ A. CABRANES and REENA RAGGI, Circuit Judges, concur, dissenting from the denial of rehearing in banc.

"A court may review a final order of removal only if . . . . the alien has exhausted all administrative remedies available to the alien as of right . . . ." 8 U.S.C. § 1252(d)(1). Thus Congress foreclosed our review of challenges that an alien failed to present at the agency's factfinding and appellate levels. The majority of a divided panel says that we can reach unexhausted issues nevertheless--subject only to our discretion and to the spongy test of "manifest injustice." The panel majority seems to think that Congress has shut the door with the intention that we should climb in the window.

Our law on this subject has been well settled to the contrary. As the panel majority concedes, "our court has consistently applied an issue exhaustion requirement to petitions for review from the BIA." Zhong v. U.S. Dep't of Justice, 480 F.3d 104, 119 (2d Cir. 2007). Judge Kearse's dissent persuasively attacks the deviation of the panel majority and the analysis they use to get where they go. I cannot improve upon her dissent, and there is no point in my repeating it. This dissent is taken from the denial of in

banc review because I do not know what makes the panel

majority believe that our precedent is insufficient to

decide this case, or that our precedent could be set aside

by one panel.

**I**

Our 2004 opinion in Foster v. INS held that §

1252(d)(1) precludes our review of claims and of issues that

were not exhausted at the BIA:  "[C]ourts are not free to

dispense with" the requirement that a petitioner "raise

issues to the BIA in order to preserve them for judicial

review."  376 F.3d 75, 77-78 (2d Cir. 2004) (emphasis in

original) (internal quotation marks omitted).  "We held in .

. . Foster that a petitioner must have raised an issue below

to present it on appeal."  Gill v. INS, 420 F.3d 82, 86 (2d

Cir. 2005) (emphasis in original).  Since Foster came down,

every active judge of this Court has applied its holding--

usually by summary order in recognition of the settled

nature of the proposition.[1]  Ten other courts of appeals

---

[1]See, e.g., Damko v. INS, 178 F. App'x 85 (2d Cir.
2006); Qin Di Chen v. BCIS, 190 F. App'x 101 (2d Cir. 2006);
Islamovic v. Gonzales, 192 F. App'x 47 (2d Cir. 2006);
Meiying Lin v. U.S. Dep't of Justice, 188 F. App'x 28 (2d
Cir. 2006); Xian Xian Huang v. Gonzales, 187 F. App'x 107
(2d Cir. 2006); Yong Gui Liu v. Gonzales, No. 04-4475, 2006
U.S. App. LEXIS 14665 (2d Cir. June 9, 2006); Yun Yu Zheng
v. Gonzales, 179 F. App'x 752 (2d Cir. 2006); Xharo v.
Gonzales, 195 F. App'x 28 (2d Cir. 2006); Yan Fang Wang v. U.S.

have addressed the issue--and they all reached the same conclusion we did.[2]  Judge Calabresi notes that two of the circuits reached this conclusion only because "they were bound by earlier precedents in their circuits and could do nothing else."  Concurring Op. at **[5]**.  I do not think that adherence to precedent is a value so easily dismissed; in any event, those panels could have done something else: seek review in banc.

Choosing instead to depart from our well-settled precedent, the panel majority now says that we do have the discretion to review an issue presented to us on appeal that was not presented to the BIA, and moreover that we must review such an issue if necessary to prevent a "manifest injustice"--thus reserving a power to be arbitrary and captious.

Although the statute does not speak in so many words of

---

Dep't of Justice, 161 F. App'x 130 (2d Cir. 2005).

[2] See Makhoul v. Ashcroft, 387 F.3d 75, 80 (1st Cir. 2004); Xin Jie Xie v. Ashcroft, 359 F.3d 239, 245 n.8 (3d Cir. 2004); Asika v. Ashcroft, 362 F.3d 264, 267 n.3 (4th Cir. 2004); Kuang-Te Wang v. Ashcroft, 260 F.3d 448, 452-453 (5th Cir. 2001); Ramani v. Ashcroft, 378 F.3d 554, 558-60 (6th Cir. 2004); Pjetri v. Gonzales, 468 F.3d 478, 481 (7th Cir. 2006); Alyas v. Gonzales, 419 F.3d 756, 762 (8th Cir. 2005); Morales-Alegria v. Gonzales, 449 F.3d 1051, 1058-59 (9th Cir. 2006); Rivera-Zurita v. INS, 946 F.2d 118, 120 & n.2 (10th Cir. 1991); Fernandez-Bernal v. Attorney General, 257 F.3d 1304, 1317 n.13 (11th Cir. 2001).

exhausting "issues," Foster held that it makes no sense to read the statute any other way: "Accepting the blanket statement that removal is improper as sufficient to exhaust all claims would eviscerate th[e] [exhaustion] rule since any alien could claim (as nearly all do) he was not removable and then apply for judicial review on the theory he had exhausted his remedies." 376 F.3d at 78. This holding has been consistently applied in our opinions. See, e.g., Iouri v. Ashcroft, 464 F.3d 172, 177 (2d Cir. 2006) ("[T]his particular argument was not raised before the BIA and Petitioners therefore failed to exhaust their administrative remedies." (emphasis added)).

## II

Panels of this Court are bound by our precedents unless and until those precedents are overruled by the Supreme Court or by this Court sitting in banc. See Nicholas v. Goord, 430 F.3d 652, 659 (2d Cir. 2005). Nothing the Supreme Court has said could have justified the departure from Circuit precedent that the panel majority has made.

The Supreme Court has spoken plainly as to how the inferior courts should understand statutory exhaustion

requirements. When Congress says (as it did in §

1252(d)(1)) that a petitioner must have "exhausted all administrative remedies available as of right," the petitioner must do so in accordance with that agency's procedures. See Jones v. Bock, 127 S. Ct. 910, 923 (2007) ("[I]t is the prison's requirements . . . that define the boundaries of proper exhaustion."). The Supreme Court has thus emphasized that the existence of an issue exhaustion requirement does not hinge solely on statutory wording: "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Woodford v. Ngo, 126 S. Ct. 2378, 2386 (2006).

Thus in Sims v. Apfel, the Court ascertained the need for issue exhaustion by examining the agency's regulations and its internal appellate process. 530 U.S. 103, 106-12 (2000).[3] Sims ruled that appeals to the Social Security

_____

[3] The Sims Court consulted the regulations to determine the propriety of an exhaustion rule because the statute at issue in that case made no reference to exhausting administrative remedies, see 42 U.S.C. § 405(g) (requiring only a "final decision"). While Sims is concerned with judicial imposition of an issue exhaustion requirement, the Court's analysis of agency processes should inform our determination of the scope of a statutory exhaustion requirement such as § 1252(d)(1). I agree with Judge Kearse that Foster reached the right answer in making this determination. See Zhong,

Appeals Council need not specify grounds for reversal; but the analysis used in Sims compels the opposite conclusion in the immigration context.  The Court concluded that social security regulations did not require issue exhaustion, but observed that "it is common for an agency's regulations to require issue exhaustion in administrative appeals," id. at 108, and the example it cited of a regulation that does require as much--and therefore would necessitate issue exhaustion--closely tracks the words of its immigration analog.  Compare 20 C.F.R. § 802.211(a) (petitions for review by the Benefits Review Board must "list the specific issues to be considered on appeal"), with 8 C.F.R. § 1003.3(b) ("The party taking the appeal must identify the reasons for the appeal . . . [including] the findings of fact, the conclusions of law, or both, that are being challenged.").

In considering the agency's appellate process, the Sims Court examined the agency's directions to those seeking to file an appeal within the agency, and inferred that the "Council does not depend much, if at all, on claimants to identify issues for review."  530 U.S. at 111-12 (citing 20

480 F.3d at 137 (Kearse, J., dissenting) ("Given the present context, to wit, issues presented in a petition for review, I regard the phrase 'issues not raised in the course of exhausting all administrative remedies' (emphases added) as an oxymoron.").

C.F.R. § 422.205(a) and Form HA-520).  By contrast, the Executive Office for Immigration Review expressly instructs aliens to "give specific details why you disagree with the Immigration Judge's decision" and to "specify the finding(s) of fact, the conclusion(s) of law, or both, that you are challenging."  Form EOIR-26, <u>available at</u> http://www.usdoj.gov/eoir/; <u>see also</u> 8 C.F.R. § 1003.38.

## III

Having decided to bypass our precedent, the panel majority makes a pretense of laying down criteria for the circumstances (purportedly limited) in which we might excuse or ignore a petitioner's failure to exhaust issues before the BIA.

First, the panel majority would consider whether the government objected on appeal to the petitioner's failure to exhaust.  <u>Zhong</u>, 480 F.3d at 107 n.1, 125.  (This is raised as a purported ground of distinction between the present case and <u>Foster</u>).  Even were this a legitimate consideration, no waiver should be inferred from the lack of objection by the government where, as here, the government had no reason to assume that we would deviate from our well-settled precedent.  If waiver can be inferred here, it can be inferred anywhere.  And future panels may simply deem an

objection 'insufficiently specific' to render the waiver issue--which the panel majority regards as essential to considering the unexhausted issues in the present case-- meaningless.

In any event, § 1252(d)(1) tells us what the "court may review," not what the parties must do; so its mandate should not be reduced to the status of an affirmative defense.[4] The statutory context demonstrates why Congress chose to express § 1252(d)(1) as a limitation on our power. Courts of appeals are empowered only to review final orders of removal, not to re-adjudicate the underlying application for relief.[5] Because we cannot <u>review</u> something that the BIA had no occasion or duty to decide, we should not be freed from the constraint of § 1252(d)(1) by the absence of a

---

[4] <u>Cf.</u> <u>Eberhart v. United States</u>, 546 U.S. 12, 15-16 (2005) (holding that a violation of Federal Rule of Criminal Procedure 33's deadline for the filing of a motion for a new trial, which is prefaced with "Any motion . . . must be filed," must be timely objected to); <u>Johnson v. Testman</u>, 380 F.3d 691, 695 (2d Cir. 2004) (holding that the exhaustion requirement of the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a), which is prefaced with "No action shall be brought," is waivable).

[5] <u>Compare</u> 28 U.S.C. § 2349(a) (limiting our jurisdiction over final orders of removal to "determining the validity of, and enjoining, setting aside, or suspending, in whole or in part, the order of the agency"), <u>and</u> 8 U.S.C. § 1252(a)(1) (incorporating by reference the jurisdictional limitations of the Administrative Orders Review Act, §§ 2341-2353), <u>with</u> 42 U.S.C. § 405(g) (permitting a federal court to issue "a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security . . . without remanding the cause for a rehearing").

government objection or by the government's undertaking instead to demonstrate that an unpreserved issue is meritless.

The panel majority would next consider whether the BIA affirmed summarily, and draws the senseless inference that a summary affirmance adopts all of the IJ's grounds for denying relief even if the petitioner challenged fewer than all of them. Zhong, 480 F.3d at 125. But why presume that the BIA considers and decides issues that were not argued to it? And why assume that the BIA conducts a broader review before issuing a summary disposition than it does when it issues an opinion? See United States v. Gonzalez-Roque, 301 F.3d 39, 47 (2d Cir. 2002) ("Although the BIA has access to the entire record, it is not obligated to search it for possibly meritorious appellate issues."). One suspects that this consideration is raised by the panel majority chiefly as a way to embarrass the BIA for adopting streamlined practices. "[I]t is not the role of the federal courts to dictate the internal operating rules of the BIA." Kambolli v. Gonzales, 449 F.3d 454, 465 (2d Cir. 2006). As it happens, our Court follows a similar rule. See 2d Cir. R. § 0.23.

Last, the panel majority would consider whether "additional factfinding is necessary," Zhong, 480 F.3d at

107 n.1, 125. This is just another way of saying that a panel may consider on appeal any issue it sees in the record without regard to whether it was raised to the BIA. In any event, under 8 U.S.C. § 1252(a)(1), "the court may not order the taking of additional evidence."

The considerations proffered by the panel majority amount to no effective limitation on the willingness of a panel to disregard issue exhaustion at will.[6] And so, in an effort to create the illusion of restraint, the panel majority holds that the only cases in which a panel must ignore § 1252(d)(1) are those in which doing so would "prevent manifest injustice." Zhong, 480 F.3d at 107 n.1.

The panel majority's footnote discussing "manifest injustice" is pure dicta because no injustice (manifest or not) has been identified in this case. In any event, I

---

[6] Judge Calabresi offers comfort in the form of 26 cases decided after Zhong came down in which panels did not grasp the opportunity to decide a question never presented to the BIA. Concurring Op. at **[11-12]**. This score is offered as a response to a floodgate argument I do not make. The institutional danger is not that many panels will take the opportunity to decide many such issues; it is that a single panel will be able to designate itself to decide a particular issue, and reach it at will after dispensing with the essentially meaningless criteria the Zhong majority formulated as a supposed restraint on the abuse of power and discretion. In any event, the score cited reflects only what has happened thus far--while this in banc initiative has been pending. Panels may be less inclined to exercise judicial restraint in the future. Stay tuned.

share Judge Kearse's skepticism concerning "whether this Court actually has the power to remedy even a manifest injustice when we lack jurisdiction." Zhong, 480 F.3d at 138 (Kearse, J., dissenting). The idea itself was improvised by a panel of this court in Marrero Pichardo v. Ashcroft, an appeal from the denial of habeas relief sought by a felon who failed altogether to appeal his order of deportation to the BIA. 374 F.3d 46, 52-54 (2d Cir. 2004). Recent rulings had called into question whether Marrero Pichardo could be deemed an aggravated felon on the basis of his DUI convictions--of which there were eleven (hence the manifest injustice). As I have observed elsewhere, Marrero Pichardo can tenably stand only for two propositions already laid down by the Supreme Court: [i] "courts may not be bound by congressional limitations on jurisdiction that raise constitutional problems"; and [ii] exhaustion requirements "do not apply if there is no possibility of relief from the administrative agency, in which event the administrative officers would presumably have no authority to act on the subject of the complaint, leaving the [complainant] with nothing to exhaust." Gill, 420 F.3d at 95-97 (Jacobs, J., dissenting) (internal citations omitted). Marrero Pichardo stands for nothing more, and certainly does not authorize us

(if any panel opinion could) to reach unexhausted issues on an appeal from the BIA, or to assume that injustices that are truly "manifest" will have been overlooked by the petitioners themselves.

**IV**

The panel majority opinion makes its case for why § 1252(d)(1) leaves issue exhaustion to discretion; it makes no case for why any member of this Court is bound to follow it.

When an issue is settled (as this one has been), panels that follow precedent have no occasion to revisit it--they simply apply the rule by summary order.  So judges with a mind to undo a precedent need only await such a case with patience and select themselves to decide the issue as if it had not already been settled.  Such deviation from precedent is something that a disciplined court should consider in banc in order to preserve the coherence and consistency of its jurisprudence.  By rejecting in banc review, we decline to consider together an issue of "exceptional importance," one which no one can dispute is "necessary to secure or maintain uniformity" in our Circuit.  Fed. R. App. P. 35(a).

Sometimes, in banc proceedings can be obviated by the circulation of a draft opinion to the active members of the

Court; litigants and the public are then advised by footnote that no objection was interposed.  That was not done in this case.[7]  This circumvention can be effective only because our in banc practice is so rusty and cumbersome that its desuetude will allow a single panel to skate past full court review.

By the same token, however, any other panel may--with equal authority and equal occasion and equal legitimacy--overrule the panel majority's holding.  This prospect is institutionally dangerous, and risks debasing the currency of our rulings and opinions.

_____

[7] Judge Calabresi advises that two of the three judges who signed the per curiam in Foster are willing to concede that the most significant ruling in it may be dicta.  Concurring Op. at **[2]**.  I do not think that the informal approbation of two possible authors is a substitute for in banc review of a case whose principle has been consistently cited as authority by this Court, relied upon by litigants, and adopted by ten other courts of appeals.